Filed 8/12/26  P. v. Quiming CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JESSE DEVLIN QUIMING, <br><br> Defendant and Appellant. | H053114 <br> (Monterey County <br> Super. Ct. No. SS151045A) <br><br> ORDER MODIFYING OPINION <br> AND DENYING PETITION FOR <br> REHEARING <br> [NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed on July 17, 2026, be modified as follows:

On page 4, in the third paragraph under the heading "Prior Criminal History," revise the first sentence to read:  Quiming violated his probation in 2012, 2014, and 2016, twice reoffending while on probation.

On pages 15 and 16, delete footnote 7.

On page 16, add the following paragraph to the end of the "Discussion" section:  Moreover, given the trial court's single reference to the possible NGI plea, we are not persuaded that the plea weighed significantly on the court's decision not to dismiss Quiming's strike prior.  The court's careful

consideration of the *Williams* factors (discussed *ante*)—particularly its focus on the severity and violence of Quiming's current offense and his unreliable response to mental health support—clearly indicates that it would have reached the same conclusion even if it had not considered the hypothetical NGI plea.  (*People v. Dain* (2025) 18 Cal.5th 246, 261 [requiring remand for a new determination if the trial court "mistakenly considered extrinsic factors" "unless the record ' "clearly indicate[s]" ' that the correction would make no difference"].)

There is no change in the judgment.  The petition for rehearing is denied.

_____

Danner, J.


_____

Greenwood, P. J.


_____

Bromberg, J.


**H053114**
***People v. Quiming***

Filed 7/17/26  P. v. Quiming CA6 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESSE DEVLIN QUIMING,<br><br>    Defendant and Appellant. | H053114<br>(Monterey County<br> Super. Ct. No. SS151045A) |

This is Jesse Devlin Quiming's third appeal to this court in connection with his convictions for murder and attempted voluntary manslaughter.

In 2015, a jury convicted Quiming of the first degree murder of Scott Long (Pen. Code,[1] § 187, subd. (a); count 1) and attempted voluntary manslaughter of T.M.[2] (§§ 664, 192, subd. (a); count 2), and found true allegations that Quiming personally used a deadly weapon (§ 12022, subd. (b)(1)) as to both counts and personally inflicted great bodily injury in the commission of the attempted voluntary manslaughter (§ 12022.7, subd. (a)).

---

[1] All further unspecified statutory references are to the Penal Code.

[2] We refer to the surviving victim and civilian witnesses by their initials to protect their privacy interests.  (See Cal. Rules of Court, rule 8.90(b)(4), (10), (11).)

The trial court found that Quiming was previously convicted of a serious felony (serious felony prior) (§ 667, subd. (a)(1)) and suffered a prior serious or violent felony conviction (strike prior) (§ 1170.12, subd. (c)(1)). The court sentenced Quiming to an aggregate prison term of 56 years to life.

Following a successful petition for writ of habeas corpus, in March 2024, this court vacated the first degree murder conviction and remanded the matter for retrial or, if the district attorney elected not to retry Quiming, to modify the judgment to reflect a conviction for second degree murder on count 1 and attempted voluntary manslaughter on count 2 and resentence Quiming accordingly. (*In re Quiming* (Mar. 28, 2024, H050201) [nonpub. opn.].)

The district attorney elected not to retry Quiming, and the trial court resentenced him. The court struck the enhancement for the serious felony prior (§ 667, subd. (a)(1)) and sentenced Quiming to 15 years to life on count 1, doubled to 30 years to life based on the strike prior, consecutive to one year for the deadly weapon allegation. In so doing, the trial court declined to strike Quiming's strike prior pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). The court ordered the sentence on count 2 and the related enhancements to run concurrently with the sentence on count 1. On appeal, Quiming argues that the trial court abused its discretion by declining to dismiss the strike prior.

For the reasons stated below, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND[3]

### A. Facts and Charges

On the evening of June 19, 2015, Quiming, Long, T.M., J.A., and J.B. were in an area behind the Monterey public library, where the homeless

---

[3] We summarize the facts from this court's opinion in Quiming's appeal in *People v. Quiming* (Jan. 31, 2019, H043494) [nonpub. opn.]. We grant

community tended to "hang out."  Long, T.M., and J.A. were drinking alcohol and Quiming (who did not know them) asked if he could have some.  Long told Quiming, "No," and criticized Quiming for failing to introduce himself.  According to witnesses, Quiming then either sat down or lay down.

Approximately 10 minutes later, Quiming got back up and stabbed Long.  As Quiming was stabbing Long, T.M. tried to intervene, and Quiming stabbed T.M.  T.M. yelled to J.A. that Quiming had a knife.  Quiming then ran away, leaving his belongings behind.

J.A. reported the stabbing at the police station, which was across the street from the library.  The responding officer found Long dead at the scene, and took statements from T.M. and J.B.

On June 20, 2015, the Monterey County Sheriff's Department located Quiming and took him into custody.

The Monterey County District Attorney charged Quiming by first amended information with the first degree murder of Long (§ 187, subd. (a); count 1) and the attempted murder of T.M. (§§ 664, 187, subd. (a); count 2).  The district attorney alleged with respect to counts 1 and 2 that Quiming used a deadly and dangerous weapon, a knife (§ 12022, subd. (b)(1)), and had been previously convicted of a serious and/or violent felony (§ 1170.12) and a serious felony (§ 667, subd. (a)(1)).  The district attorney alleged with respect to count 2 that Quiming personally inflicted great bodily injury on T.M. (§ 12022.7, subd. (a)).

---

Quiming's request to take judicial notice of the record in *People v. Quiming*, *supra*, H043494.  On our own motion, we take judicial notice of this court's prior opinions in *People v. Quiming*, *supra*, H043494, *People v. Quiming* (July 26, 2021, H047387) [nonpub. opn.], and *In re Quiming*, *supra*, H050201.

3

*B. Prior Criminal History*

In 2005, Quiming was convicted of robbery (§ 211) and placed on three years of formal probation, with a jail sentence of 120 days.

Between 2006 and 2011, Quiming was convicted of five misdemeanors (driving with a suspended or revoked license (Veh. Code, § 14601.1, subd. (a)), driving under the influence (*id.*, § 23152, subd. (a)), reckless driving (*id.*, § 23103), resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1)), and vandalism (§ 594, subd. (b)(2))).  In addition, he was convicted of receiving stolen property (§ 496, subd. (a)).

Quiming violated his probation in 2002, 2012, 2014, and 2016, twice reoffending while on probation.  His performance on probation was deemed "unsatisfactory."

*C. Procedural Background*

    1. <u>Conviction and Original Sentence</u>

A jury convicted Quiming of the first degree murder of Long.  The jury found Quiming not guilty of the attempted willful, deliberate, and premeditated murder of T.M., but instead found him guilty of attempted voluntary manslaughter of T.M. (§§ 664, 192, subd. (a)).  The jury found true the deadly weapon allegations attached to both counts and the great bodily injury allegation attached to count 2.  The trial court found true the strike prior and serious felony prior allegations.

The trial court sentenced Quiming to an aggregate prison term of 56 years to life, including a consecutive one-year term for the deadly weapon enhancement and a consecutive five-year term for the serious felony prior.

    2. <u>Incarceration</u>

While incarcerated, Quiming committed 13 rules violations between 2019 and 2021.  Four of the rules violations were classified as "serious,"

4

including willful resistance of a peace officer, fighting, battery on a prison staff member, and battery on a peace officer. California Department of Corrections and Rehabilitation (CDCR) records indicate that Quiming's mental illness was a contributing factor in some of his rules violations.

The CDCR records indicate that Quiming was doing well in vocational courses and had remained "disciplinary free" since February 17, 2020.

### 3. Earlier Appeals and Habeas Petition

Quiming appealed the judgment and, in 2019, a different panel of this court reversed the judgment and remanded the matter to the trial court for resentencing based on legislative changes involving sentencing and other matters. (*People v. Quiming, supra*, H043494.) The trial court resentenced Quiming, declining to strike his serious felony prior, and, in 2021, a different panel of this court affirmed the judgment. (*People v. Quiming, supra*, H047387.)

In the interim, Quiming filed a petition for writ of habeas corpus in the trial court in June 2019, which the trial court denied. Quiming then sought a writ of habeas corpus in this court, which this court summarily denied. The California Supreme Court granted review and transferred the matter with directions for this court to vacate its summary denial and issue an order to show cause. In March 2024, this court vacated the first degree murder conviction and remanded the matter for retrial or, if the district attorney did not elect to retry Quiming, to modify the judgment to reflect a conviction for second degree murder on count 1 and attempted voluntary manslaughter on count 2 and resentence Quiming accordingly. (*In re Quiming, supra*, H050201.)

The district attorney declined to retry Quiming, and the trial court conducted a resentencing hearing.

4. Resentencing

In anticipation of the resentencing hearing, Quiming requested that the trial court dismiss the serious felony prior and the strike prior, and sentence him to an aggregate indeterminate prison term of 16 years to life.

Quiming asked the trial court to exercise its discretion to dismiss the strike prior under *Romero*. In support of his request to dismiss the strike prior, Quiming submitted declarations and letters from family members and a psychiatrist attesting to his difficult childhood, his mental health struggles, his frequent homelessness, his performance while incarcerated (participation in educational opportunities, no serious disciplinary violations since 2020), and the strong support he has from his family. In addition, Quiming contended that the circumstances of the robbery that formed the basis for the strike prior also supported the court exercising its discretion to dismiss the strike prior. He cited his minor role in the robbery, youth, and mental illness; the remoteness in time of the conviction (10 years prior to the current offense); and the lack of physical harm to the victim and the small amount of money taken.[4]

The district attorney opposed Quiming's *Romero* motion. In discussing the risks posed by Quiming's mental health issues, the district attorney asserted that Quiming "wants to enjoy the mitigating aspect of his mental health condition without acknowledging the aggravating public safety component of it that will exist for the entirety of his life. . . . He wants to be released from prison due to his mental health condition and few years of good behavior, but not receive the life-long involuntary commitment that often

---

[4] In addition, at the resentencing hearing, Quiming argued that, because he would still face an indeterminate life sentence if the trial court dismissed the strike prior, the Board of Parole Hearings and the Governor would serve as "a safety valve" with respect to public safety.

accompanies an NGI/MDO [(not guilty by reason of insanity/mentally disordered offender)] finding for a paranoid schizophrenic who commits extreme violence due to their schizophrenia."  In response, Quiming contended that "defendants in NGI and MDO cases are permitted annual or bi-annual reviews of their cases as a matter of due process."

On March 7, 2025, the trial court conducted Quiming's resentencing hearing.

The trial court stated that it had reviewed the documents filed in the matter, including Quiming's motion to dismiss the serious felony prior and *Romero* motion to dismiss the strike prior; the sentencing memorandum; and the original and new sentencing reports/probation reports.

The trial court considered Quiming's request to strike the serious felony prior under section 1385, subdivision (c), and his *Romero* motion requesting dismissal of the strike prior under section 1385, subdivision (a) (section 1385(a)).  The court stated the two provisions "are evaluated differently," and "there are competing sentencing concerns":  first, "the decreased blameworthiness as a result of [] Quiming's mental health issues" and second, the "public safety risk that the mental health issue itself contributes to."

After considering the applicable mitigating factors under section 1385, subdivision (c)—mental illness, childhood trauma, prior conviction over five years old—and "afford[ing] them great weight," the trial court struck the serious felony prior.

The trial court stated that, on the other hand, dismissing a strike prior requires "an extraordinary exercise of discretion" and requires the court to consider factors identified in *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*) to determine whether the sentence is unjust, namely:  "the

7

circumstances of the prior convictions," the defendant's "past criminal record," "the nature and circumstances of the incident offense," and "the defendant's background, character, and prospects."

Addressing each of the *Williams* factors in turn, the trial court found that the robbery prior did not involve violence or the use of weapons but was not "a single period of aberrant behavior" given Quiming's additional criminal convictions since the robbery. While Quiming's criminal activity between 2005 and 2011 "decrease[d]" "somewhat," the court stated that Long's murder was "obviously a dramatic increase in the severity of [Quiming's] criminal behavior in 2015," and Quiming's performance on probation had been unsatisfactory. The court found that the nature and circumstances of the current offense were "violent" and "involved multiple victims." It stated that the "mental health issues have in some part been addressed by the Court of Appeal's direction to reduce this murder to a second-degree murder."

The trial court considered the strength of Quiming's family support, but observed that, despite such support, "time after time [Quiming] rejects that support and those opportunities that are given to him." The court expressed its "grave concern" about Quiming's "mental health issues that seem to direct him to be violent" and his capability for violence. Although the court acknowledged that, in the past five years, Quiming had made "great progress," it further acknowledged that such progress had been made "because [Quiming] ha[d] been in a structured environment, one where basically they are going to make sure that [he] take[s] [his] medicines and that [he is] receiving the mental health treatment that [he] so need[s]." The court was concerned by and "weigh[ed] heavily" Quiming's prior lack of participation when offered mental health services.

8

The trial court considered aggravating and mitigating factors set forth in the California Rules of Court, including the "extremely violent" circumstances of the current offense and Quiming's mental health issues and long period of homelessness. The court also referenced the district attorney's argument in her opposition papers about the effect of an NGI finding, stating that not imposing the strike would "allow[] [Quiming] to get around a potential NGI plea that was potentially being incarcerated for the rest of his life and giving him a different opportunity."

After considering the aforementioned factors, the trial court concluded that imposing the strike would not be unjust. The court declined to dismiss the strike prior.

Pursuant to the remittitur from this court and the district attorney's election not to retry Quiming, the trial court entered a conviction on count 1 for second degree murder. The court sentenced Quiming on count 1 to 15 years to life, doubled to 30 years to life pursuant to the strike prior, and one year for the deadly weapon enhancement, to run consecutively. The court imposed a sentence of three years on count 2, doubled to six years pursuant to the strike prior, three years for the great bodily injury enhancement, and one year for the deadly weapon enhancement. The court ordered the sentence on count 2 and the attached enhancements to run concurrently with the sentence on count 1. The court imposed an aggregate indeterminate sentence of 30 years to life and a determinate sentence of one year.

## II. DISCUSSION

Quiming contends that the trial court abused its discretion in declining to dismiss his strike prior on the ground that numerous factors weighed in favor of dismissal in the furtherance of justice, namely, the " 'minor' " circumstances of the strike prior and its remoteness from the current offense,

9

Quiming's youth at the time of the prior offense, and evidence demonstrating that the prior, current, and intervening offenses were all committed while Quiming was suffering from mental illness. Quiming further contends that, in reaching its decision, the court improperly ignored the "safeguards" provided by the parole review process. He also asserts that the court impermissibly considered a "hypothetical" NGI plea when it decided not to dismiss the strike prior.[5]

### A. Legal Principles

Section 1385(a) authorizes trial courts to dismiss an action—including a prior conviction alleged under the Three Strikes law (*Romero*, *supra*, 13 Cal.4th at pp. 529–530)—"in furtherance of justice." (§ 1385(a).) The California Supreme Court has held that, within the meaning of section 1385, " ' " 'furtherance of justice[]' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]' [Citations.]

---

[5] In addition, in his opening brief, Quiming challenges the conclusions the trial court drew from his unwillingness to accept treatment, the court's concern regarding his improvement occurring only while in " 'a structured environment,' " and the court's finding that his mental health issues " 'direct him to be violent.' " Quiming offers no legal authority to suggest that consideration of such findings constitutes legal error. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) Moreover, as the reviewing court, we may not substitute our judgment for that of the trial court " ' "merely because reasonable people might disagree." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

In his reply brief, Quiming raises for the first time a challenge to the trial court's statement during the resentencing hearing that his " 'mental health issues have in some part been addressed by the Court of Appeal's direction to reduce this murder to a second-degree murder.' " We do not further consider this untimely argument. (*People v. Oneal* (2021) 64 Cal.App.5th 581, 592, fn. 6.)

At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." ' " (*Romero*, at pp. 530–531.)

In exercising its discretion under section 1385(a) and *Romero*, the trial court must consider whether "in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.) As our Supreme Court explained in *Carmony*, these factors must be considered in the context of the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) In addition, "[f]actors in aggravation and mitigation listed in the California Rules of Court may be relevant to the court's inquiry." (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029 (*Dryden*); see Cal. Rules of Court, rules 4.421, 4.423.)

We review the denial of a motion to dismiss a strike prior allegation for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at pp. 376–377.) "Abuse of discretion in failing to strike a prior conviction occurs in limited circumstances: where the trial court is not aware of its discretion; where the trial court considers impermissible factors; or where applying the Three Strikes law would produce an arbitrary, capricious, or patently absurd result under the specific facts of a particular case." (*Dryden*, *supra*, 60 Cal.App.5th at p. 1029.)

The burden is on the party attacking the sentence to clearly show that the sentencing decision is irrational, arbitrary, or contrary to law. (*Carmony*, *supra*, 33 Cal.4th at p. 376.) In the absence of such a showing, " ' "the trial court is presumed to have acted to achieve legitimate sentencing objectives,

11

and its discretionary determination to impose a particular sentence will not be set aside on review.' ' " (*Id*. at pp. 376–377.) The reviewing court may not substitute its judgment for that of the trial judge " ' "merely because reasonable people might disagree." ' " (*Id*. at p. 377; *Dryden*, *supra*, 60 Cal.App.5th at p. 1029 ["A reviewing court's disagreement with the trial court's weighing of proper factors (as distinct from the trial court's reliance on improper factors in the weighing process) does not constitute an abuse of discretion."].)

### B. Analysis

Quiming contends that the trial court abused its discretion in declining to dismiss his strike prior because numerous factors weighed in favor of dismissal in the furtherance of justice, namely, the prior offense was "[m]inor" and "[r]emote" in nature, Quiming was a youth at the time of the prior offense, and the prior, current, and intervening offenses were all committed while Quiming was suffering from mental illness. In support of his contention, Quiming relies in particular on *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*).

Quiming analogizes the circumstances of his current and prior offenses to those of the defendant in *Avila*, specifically both defendants' young ages (Avila was 18 years old at the time of his first strike offense, Quiming was 22), the remoteness of the strike priors (26 and 28 years ago for Avila, 10 for Quiming), and the defendants' " 'poststrike criminal history [] not [being] characterized by serious or violent crimes.' " (Quoting *Avila*, *supra*, 57 Cal.App.5th at p. 1143.) On these bases, Quiming contends that this court should likewise decide the trial court abused its discretion in declining to dismiss the strike prior. (See *id*. at p. 1145 [concluding the trial court abused its discretion].)

12

Having carefully considered *Avila* and the record before us, we conclude the trial court did not abuse its discretion here.

*Avila* is distinguishable on its facts. In that decision, the Court of Appeal decided the trial court abused its discretion based on the trial court's failure to consider relevant factors and mischaracterization of the current offense as violent. (*Avila, supra,* 57 Cal.App.5th at p. 1145.) In contrast, the trial court here considered all the factors set forth in *Williams*: the circumstances of Quiming's prior conviction, his past criminal record, the nature and circumstances of his current offense, and his background, character, and prospects. (*Williams, supra,* 17 Cal.4th at p. 161.) The parties do not dispute the violent nature of Quiming's current offenses.

We acknowledge that Avila and Quiming were similar in age during their respective first strike offenses. However, the asserted remoteness of the strike prior and the defendants' " 'poststrike criminal history' " are not analogous. Avila's first and second strikes occurred 28 and 26 years, respectively, prior to his current offense. (*Avila, supra,* 57 Cal.App.5th at p. 1141.) Quiming's, in contrast, occurred only 10 years earlier. Although Quiming asserts that 10 years "is still substantial, especially given what occurred during that intervening decade, when appellant struggled with chronic homelessness and mental illness," the remoteness in *Avila* was more than twice as long. Moreover, "[s]ection 667, subdivision (c)(3) . . . of the Three Strikes law expressly provides, 'The length of time between the prior serious or violent felony conviction and the current felony conviction *shall not* affect the imposition of sentence.' " (*People v. Dain* (2025) 115 Cal.App.5th 235, 248; see also § 1170.12, subd. (a)(3) [same].)

Likewise, Avila's and Quiming's " 'poststrike criminal history' " is distinguishable. While Avila's and Quiming's intervening convictions were

nonviolent in nature and were predominantly misdemeanors,[6] their respective current offenses differed significantly. Avila's offense—attempted robbery and attempted extortion—involved Avila demanding money from fruit vendors and, when the vendors refused, destroying bags of oranges. (*Avila*, *supra*, 57 Cal.App.5th at p. 1139.) As the Court of Appeal stated, Avila's offense "was not violent or brutal by any stretch. Avila did not use a weapon or otherwise use physical violence against the victims, nor did he make any specific threats. He squashed oranges." (*Id*. at p. 1142.) Quiming, in contrast, was convicted of the second degree murder of Long and the attempted voluntary manslaughter of and the infliction of great bodily injury on T.M., in both cases using a knife.

Moreover, we must presume the trial court knew and correctly applied the law. (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 434.) Although in some cases this presumption can be overcome by the record, this is not one of those cases. The court confirmed its understanding of the applicable law when it declined to dismiss Quiming's strike prior. The court correctly stated the appropriate standard and factors when considering whether to exercise its discretion under section 1385(a) (see *Williams*, *supra*, 17 Cal.4th at p. 161) as well as under the applicable California Rules of Court (Cal. Rules of Court, rules 4.421, 4.423). Addressing Quiming's criminal history, the court recognized that the strike prior did not involve violence or the use of a weapon and that Quiming's subsequent convictions appeared to decrease in

---

[6] "In 1999, Avila was convicted of unlawful sexual intercourse with a minor under the age of 16 (§ 261.5, subd. (d)) and sentenced to four years in prison. He later married her, and they had a child together." (*Avila*, *supra*, 57 Cal.App.5th at p. 1143; see also *id*. at p. 1143, fn. 9 ["Avila's victim/wife stated that her mother allowed the relationship."].) The remainder of Avila's criminal history involved convictions for misdemeanors. (*Id*. at p. 1143.)

14

severity but stated that the current offense was "obviously a dramatic increase in the severity" in both violence and victim impact. The court also considered Quiming's background, character, and prospects, addressing the evidence and influence of Quiming's mental health issues, his homelessness, and the family support and opportunities offered him, as well as Quiming's response to such support.

As a reviewing court, our role is not to decide what decision we would have made in response to Quiming's *Romero* motion. We may only ask whether the trial court's decision was arbitrary, capricious, or patently absurd. We conclude it was not.

We are not persuaded by Quiming's other arguments on appeal.

Although the trial court did not explicitly say that it had considered "the safety valve that exists due to the review by the Board of Parole Hearings" (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 229), because the record is silent as to whether the court considered this factor, we presume the court correctly applied the law. (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 637.) Moreover, while consideration of the Board of Parole Hearings' review process is relevant, it is not dispositive. (See *Gonzalez*, at p. 228, fn. 10.)

Even assuming arguendo that the trial court impermissibly considered a "hypothetical" NGI plea, the court provided other, permissible reasons for not dismissing the strike prior in the furtherance of justice, including the increased severity of the current offense, the "extremely violent" nature of that offense, and Quiming's inconsistent response to proffered mental health support despite his mental health issues.[7] These reasons adequately and

---

[7] In his reply brief and at oral argument, Quiming asserted that the trial court's consideration of an extrinsic factor (the hypothetical NGI plea)

15

independently support the court's finding that Quiming falls within the spirit of the Three Strikes law. We therefore decide that any error related to the court's stray reference to a possible NGI plea was harmless (see *People v. Leonard* (2014) 228 Cal.App.4th 465, 503–504) and does not demonstrate the trial court committed prejudicial error.

## III. DISPOSITION

The judgment is affirmed.

---

constitutes legal error requiring remand. Quiming cited *People v. Dain* (2025) 18 Cal.5th 246, 261–262 for the premise that a reviewing court "should remand for [a] new *Romero* determination where [the] trial court 'mistakenly considered extrinsic factors,' unless [the] record 'clearly indicate[s]' [a] correction would make no difference." This untimely argument is forfeited. We further decide that, based on the trial court's careful consideration of the *Williams* factors, the record clearly indicates that the court would have reached the same conclusion even if it had not considered the hypothetical NGI plea.

_____
Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Bromberg, J.

**H053114**
*People v. Quiming*